

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| ASHLEY JANELLE LORD, | ) | No. ED99769 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Patrick Clifford |
| DIRECTOR OF REVENUE, | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 1, 2014 |

Introduction

The Director of Revenue, State of Missouri ("the DOR") appeals the judgment of the trial court in favor of Ashley Lord ("Lord") on Lord's petition for review of the revocation of her driver's license pursuant to Section 302.535.[1]  The DOR argues that the trial court erroneously applied the law in finding that the arresting officer lacked legal probable cause to arrest Lord for driving while intoxicated.  Because the record contains uncontested evidence establishing the requisite probable cause to arrest Lord for driving while intoxicated, we reverse the judgment of the trial court reinstating Lord's driving privileges and remand to the trial court for further proceedings consistent with this opinion.

---

[1] All statutory references are to RSMo 2000.

1

Factual and Procedural History

On December 17, 2011, at 3:39 a.m., Lord was pulled over by the arresting officer on westbound Interstate 64 near Woods Mill Road. The officer's arrest narrative states that he observed Lord's vehicle twice change lanes without signaling, as well as weave over the right side of the lane both before and after passing Woods Mill Road.[2] The officer's dash cam video shows Lord's vehicle drifting into the adjacent lane. Upon making contact with Lord, the officer asked her how much she had to drink that evening. Lord responded, "I've had two drinks." On the alcohol influence report ("AIR") submitted by the officer, he noted a "strong" odor of alcohol on Lord, that her eyes were "bloodshot," "glassy," and "watery," that her balance and walking was "uncertain" and "swaying," and that her speech was "confused."

The arresting officer asked Lord to perform a series of field sobriety tests. The officer administered the horizontal gaze nystagmus test ("HGN"), the walk-and-turn test, and the one-leg stand test. The officer observed several indicia of intoxication from those tests, which he noted in the AIR. The AIR indicated that Lord exhibited six clues of intoxication on the HGN. The AIR also indicated that on the walk-and-turn test, Lord failed to maintain a heel-to-toe stance, started the test before being instructed to begin, failed to touch heel to toe on steps 3, 5, and 7, used her arms for balance, and lost her balance while turning/made an improper turn. Finally, the AIR indicated that during the one-leg stand test, Lord used her arms for balance, repeated "six," and put her foot down at seconds 12, 13, and 14. The officer then had Lord perform another field sobriety test, the Portable Breath Test ("PBT"). Lord did so, and the PBT indicated a blood alcohol concentration above the legal limit. At that time, the officer placed Lord under arrest for driving while intoxicated.

---

[2] Lord was issued traffic citations for both of these violations – one for improper lane usage by weaving and one for failure to signal lane change.

Lord subsequently filed a request for an administrative hearing pursuant to Section 302.530, which was held on March 30, 2012. Lord was notified on April 2, 2012, that her driving privileges had been suspended by the DOR. Lord filed a petition for *de novo* review of that decision, pursuant to Section 302.535.1, in St. Louis County Circuit Court. The trial was held on January 30, 2013. The arresting officer was not present.

At trial, Lord testified that she had been returning to Wildwood from a Christmas party in downtown St. Louis at the time of the arrest. She testified that she had consumed three glasses of wine that evening. Lord initially testified that she arrived at the party around midnight and left around 1:30 or 2:00 a.m. After being informed that the officer's report indicated the initial traffic stop occurred at 3:39 a.m., Lord testified that she arrived at the party around 1:30 a.m. and departed an hour and a half to two hours later. Lord testified that she performed the walk-and-turn and one-leg stand tests barefoot, on rocks on the side of the highway, and that it was cold and very windy. Lord further testified that she has bad knees from playing basketball in college, and that possibly affected her performance on the field sobriety tests. She also testified that at the time of the arrest, she had "really bad pinkeye" which caused her eyes, one in particular, to be bloodshot. Finally, Lord testified that while the officer was administering the HGN, the spinning lights of the police car were on, and she was facing traffic.

The AIR, narrative report, and other supporting documents from the DOR were admitted into evidence, and Lord introduced the arresting officer's dash cam video of the arrest and the events leading up to it. The trial court entered a form judgment that the officer did not have probable cause to arrest Lord for driving while intoxicated and ordered the DOR to reinstate her driving privileges. The trial court's judgment contained no other specific findings. This appeal follows.

## Point on Appeal

In its sole point on appeal, the DOR claims the trial court erred in finding the arresting officer lacked probable cause to arrest Lord for driving while intoxicated because the judgment erroneously declared and applied the law. Specifically, the DOR claims that the uncontested evidence of impairment shown on the arresting officer's dashboard camera video and the admissions made by Lord during her testimony are sufficient evidence to establish that the officer had probable cause to arrest Lord for driving while intoxicated.

## Standard of Review

We review the trial court's judgment reinstating Lord's driving privileges under Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). "The appellate court's role is not to re-evaluate testimony through its own perspective. Rather, the appellate court confines itself to determining whether substantial evidence exists to support the trial court's judgment, whether the judgment is against the weight of the evidence— 'weight' denoting probative value and not the quantity of evidence, or whether the trial court erroneously declared or misapplied the law." White v. Director of Revenue, 321 S.W.3d 298, 309 (Mo. banc 2010) (internal citations omitted).

## Discussion

In appellate review of a trial court's judgment, "where the facts are contested, deference is given to the trial court's assessment of the evidence and credibility of the witnesses." However, "if the evidence is uncontested or admitted so that the real issue is a legal one, then there is no need to defer to the trial court's judgment." Velluto v. Director of Revenue, 383 S.W.3d 14, 17 (Mo. App. E.D. 2012) (citing White v. Director of Revenue, 321 S.W.3d 298, 307-08 (Mo. banc 2010)). Here, Lord did not contest the DOR's evidence. Lord did not dispute that she had bloodshot eyes, that she failed the HGN, the walk-and-turn test or the one-leg stand

4

test, or that she admitted to the officer that she had been drinking.[3] She did not point out internal inconsistencies in the evidence or question the arresting officer's credibility. See White, 321 S.W.3d at 308 ("While a party can contest evidence by putting forth evidence to the contrary, a party also can contest evidence by cross-examination, or by pointing out internal inconsistencies in the evidence… [a] party also may contest evidence by arguing to the trial court that the witness is not credible as apparent from the witness's demeanor, or because of the witness's bias or the witness's incentive to lie.") (internal citations omitted).

Instead, Lord admitted as true the facts set forth in the AIR, narrative report, and dash cam video, but argued that those facts did not give the officer probable cause to arrest her.[4] Lord makes a purely legal argument. See, e.g., Harlan v. Director of Revenue, 334 S.W.3d 673, 678 (Mo. App. S.D. 2011) ("[B]oth the transcript and Driver's brief reveal that Driver's argument was a purely legal one—that Driver admitted as true the facts… but claimed that Director erred in concluding that those admitted facts provided Officer Frey with 'probable cause to believe that [Driver] was intoxicated.'"); see also Sostman v. Director of Revenue, 363 S.W.3d 55, 58 (Mo. App. E.D. 2011) ("[C]ounsel for Sostman admitted that Sostman smelled faintly of alcohol, his eyes were glassy, and that he failed elements of the gaze nystagmus test, walk-and-turn test, and one-leg standing test. He then, however, argued that these indications of intoxication did not, in aggregate, amount to probable cause for arrest. This argument was purely a legal one.") Consequently, the issue before us is the legal question of whether the officer had probable cause to arrest Lord, which we review without deference to the trial court's judgment.

---

[3] Lord disputed the reason *why* she had bloodshot eyes and failed the field sobriety tests, but she did not dispute the fact that she had bloodshot eyes at the time of her arrest, or the fact that she failed the field sobriety tests when administered. Lord also did not dispute that she told the officer she had been drinking. She testified that "[h]e asked me if I'd had anything to drink, and I didn't lie to him. I said I had."

[4] Counsel for Lord argued the following during trial: "the issue is not if he asked her how much to drink, the issue is whether or not he had probable cause to arrest based on the video that you're looking at."

5

The DOR may suspend or revoke a driver's license upon a determination that the driver was arrested upon probable cause for driving while intoxicated. Section 302.505. The driver may then seek review of the suspension or revocation through a trial *de novo*. Section 302.535.1; Orton v. Director of Revenue, 170 S.W.3d 516, 520 (Mo. App. W.D. 2005). At the trial *de novo*, the DOR has the burden of proof to establish by a preponderance of the evidence that there was probable cause to arrest the driver for driving while intoxicated and that the driver's blood alcohol concentration was .08 percent or more. Gannon v. Director of Revenue, 411 S.W.3d 394, 397 (Mo. App. E.D. 2013).

In this case, the trial court did not make a determination as to whether Lord's blood alcohol concentration was in excess of .08 percent, and the DOR only appeals the trial court's determination as to probable cause. Therefore, our review is limited to the issue of whether the arresting officer had probable cause to arrest Lord for driving while intoxicated.

The level of proof required to show probable cause is much less than that required to establish guilt beyond a reasonable doubt. Velluto, 383 S.W.3d at 18. There is no precise test for determining whether probable cause exists. Hinnah v. Dir. of Revenue, 77 S.W.3d 616, 621 (Mo. banc 2002). Instead, "[p]robable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." Id. Whether the arresting officer had probable cause to arrest Lord for driving while intoxicated is therefore "determined by examining the circumstances surrounding the arrest as they appeared to a prudent, cautious, and trained police officer." Gannon, 411 S.W.3d at 397 (citing Coyle v. Director of Revenue, 88 S.W.3d 887, 893 (Mo. App. W.D. 2002)).

6

Here, the arresting officer did not testify, although Lord did. The AIR, narrative report, and other supporting documents from the DOR were admitted into evidence. Lord also introduced the arresting officer's dash cam video showing Lord driving on the highway, being pulled over, questioned, given field sobriety tests, and subsequently arrested. The trial court entered its judgment without any specific findings, instead entering a form judgment indicating that the officer did not have probable cause to arrest Lord for driving while intoxicated. Based on the AIR, the dash cam video, and Lord's testimony, we hold that the arresting officer had legal probable cause to arrest Lord for driving while intoxicated.

The HGN, walk-and-turn, and one-leg stand tests, as well as the PBT, are all field sobriety tests available to officers in determining whether probable cause exists. An officer may, however, "develop probable cause to arrest an individual for driving while intoxicated absent any field sobriety tests at all." Gannon, 411 S.W.3d at 398. Thus, field sobriety tests are *not* a requirement for an officer to develop probable cause that an individual is driving while intoxicated. Velluto, 383 S.W.3d at 18. Instead, "[t]he tests merely supplement the officer's other observations in determining whether probable cause exists." Gannon, 411 S.W.3d at 398.

Gannon v. Director of Revenue, a recent decision by this Court, is instructive in outlining what such "other observations" of an arresting officer may include. In Gannon, we held that, even if the trial court had found the field sobriety tests unreliable, the other observations of the arresting officer, Trooper Van Winkle, constituted sufficient evidence of probable cause to arrest Gannon. Id. at 398-99. We reasoned that:

> Absent field sobriety tests or HGN testing, similar observations as those made by Trooper Van Winkle in the present case, such as traffic violations; the strong odor of intoxicating beverage; bloodshot, glassy, watery eyes; slurred speech; swaying balance or gait, and an admission to drinking by the driver have been considered sufficient evidence of probable cause to arrest for driving while intoxicated. Brown v. Director of Revenue, 85 S.W.3d 1, 4 (Mo. banc 2002) (probable cause

7

to arrest a driver for alcohol-related violation exists when police officer observes illegal operation of motor vehicle, and other indicia of intoxication upon coming into contact with driver); see also Routt v. Director of Revenue, 180 S.W.3d 521, 523–24 (Mo. App. E.D. 2006) (strong odor of alcoholic beverage, watery, bloodshot, glassy eyes, slurred speech, and swaying provided officer with reasonable grounds to believe individual was driving while intoxicated); Rain v. Director of Revenue, 46 S.W.3d 584, 588 (Mo. App. E.D. 2001) (erratic and illegal driving, glassy, bloodshot eyes, slurred speech, unsteadiness on feet, difficulty concentrating sufficient to provide officer with probable cause to arrest).

Id.

The same analysis is applicable here. At trial, Lord did not contest the fact that she had bloodshot eyes, that she failed several field sobriety tests, or that she admitted to the officer that she had been drinking. Rather, Lord's testimony merely provided explanations for her performance on the field sobriety tests and the bloodshot appearance of her eyes.[5] The trial court was free to believe or disbelieve the validity and reliability of the results of the field sobriety tests in light of that testimony. However, even absent the field sobriety evidence – the results of the HGN, PBT, walk-and-turn, and one-leg stand tests – the observations made by the arresting officer constituted sufficient evidence of probable cause to arrest Lord for driving while intoxicated. Lord committed traffic violations, smelled strongly of alcohol, exhibited swaying and uncertain balance and confused speech, had bloodshot eyes, and admitted to consuming two drinks before she was arrested. Further, each of those observations, except for the strong odor of alcohol and bloodshot eyes, is supported by the officer's dash cam video of the arrest.

Accordingly, we hold that the arresting officer had legal probable cause to arrest Lord for driving while intoxicated, and that the trial court therefore erroneously applied the law in that respect.

---

[5] We note that these explanations go more to Lord's ultimate guilt or innocence than to whether the arresting officer, under the circumstances, had probable cause to arrest her for driving while intoxicated.

## Conclusion

The judgment of the trial court reinstating Lord's driving privileges is reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

_Kurt S. Odenwald_
Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless J., Concurs

9